UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

NAUTILUS INSURANCE COMPANY,

    Plaintiff,

v.

STRONGWELL CORPORATION,

    Defendant.

Case No. 1:12-cv-00038

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT AND RENEWED MOTION TO STAY PROCEEDINGS**

COMES NOW Strongwell Corporation ("Strongwell"), by counsel, and for its reply in support of the Motion to Dismiss the Amended Complaint and Renewed Motion to Stay states as follows:

**PRELIMINARY STATEMENT**

In its brief in opposition[1] Nautilus ignores Virginia's Eight Corners Rule and Potentiality Rule; ignores the fact that the Missouri suit which Black & Veatch has filed against Strongwell includes counts alleging manufacturing defects as well as counts alleging negligence in the manufacture and production of Strongwell's products proximately causing damage to property other than the products delivered by Strongwell; and ignores the rule that if a portion of an action is covered by insurance the carrier has a duty to defend the entire action.

The Professional Services Exclusion does not apply to the manufacturing related counts, nor does any other exclusion negate the obligation to defend a suit that contains counts that are unquestionably covered by Nautilus' liability policy. Moreover, the Eight Corners Rule commands that the duty to defend be determined solely from the four corners of the Black &

---

[1] Docket No. 31.

WOODS ROGERS PLC
ATTORNEYS AT LAW

{#1571005-2, 106153-00008-01}

Veatch Amended Complaint and the four corners of the Nautilus policies. And the Potentiality Rule mandates that Nautilus provide a defense if the suit pleads *any claim* against Strongwell that might fall within the coverage afforded by the Nautilus policies. These two well-established rules dictate that Nautilus must provide a defense for Strongwell to the claims asserted by Black & Veatch.

Finally, the coverage issues Nautilus seeks to litigate go to the heart of the claims asserted by Black & Veatch against Strongwell. Forcing Strongwell to litigate the underlying case here in the guise of a coverage determination, without regard to what Black & Veatch has actually *alleged*, but rather based on what Nautilus contends that Black & Veatch can actually *prove*, flies in the face of the applicable Virginia law and of the plain terms of the insurance contract.

## ARGUMENT & AUTHORITIES

### I. NAUTILUS IGNORES THE EIGHT CORNERS RULE AND THE POTENTIALITY RULE.

Nautilus asks this Court to find that it will ultimately owe no *coverage* for the claims asserted by Black & Veatch, effectively ignoring its *duty to defend* against those claims. First, its assertion that there will be no coverage is not predicated upon anticipated evidence that takes the case outside the parameters of the policy, but rather is predicated on the anticipation that Strongwell will prevail on the counts covered by the policy. Second, Nautilus is relying on an exclusion that would apply only to a portion of the underlying action, and then is attempting to link the duty to defend to that exclusion. Indeed, Nautilus' position is neatly summed up by its assertion that:

> [T]here is no reason to require the contours of the underlying
> complaint to dictate Nautilus's coverage obligation through

>resolution of that litigation once facts extraneous to that matter establish that there is no coverage under the applicable policy.[2]

Nautilus cites no authority at all for this assertion because none exists. Virginia law is expressly to the contrary. Under the Eight Corners Rule, "[A]n insurer's duty to defend is determined *solely* by the claims asserted in the pleadings." *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 791 (E.D. Va. 2001) (emphasis added). Under the Potentiality Rule, "[I]f the complaint makes allegations that 'may' be covered by the policy, the insurer has a duty to defend." *Id.*

The Fourth Circuit, in a case applying Maryland law (which also applies the Potentiality Rule[3]), has in fact expressly rejected the position Nautilus seeks to advance here. In *Western World Ins. Co. v. Harford Mut. Ins. Co.*, 784 F.2d 558 (4th Cir. 1986), the plaintiff in the underlying action had been shot by a police officer, and filed a complaint against the officer and the City alleging claims under 42 U.S.C. § 1983. One of the two insurers that provided coverage for the City and its officers filed suit against the other, seeking a determination of which insurer was obligated to defend the claims. The District Court held that Hartford was relieved from its duty to defend the claim because facts extrinsic to the plaintiff's complaint "indicated that the shooting was an intentional act not covered under the Hartford policy." *Id.* at 562. On appeal, Hartford conceded that the complaint in the underlying action stated claims that were potentially covered by its policy, but "assert[ed] that an insurer can also look to the actual facts surrounding an event to determine whether or not coverage exists, and consequently to discern whether the insured [sic] has the duty to defend." *Id.*

---

[2] Nautilus Brief in Opposition (Docket No. 31) at p. 3.
[3] *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407-08, 347 A.2d 842, 850 (1975) ("If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.") (citations omitted).

The Fourth Circuit soundly rejected Hartford's assertion:

> The sole controlling factor relating to Harford's duty to defend is whether the allegations contained in Sampson's complaint are such that a "potentiality" of coverage exists.
>
> * * *
>
> So long as a complaint raises a potentiality of coverage, an insurer is under a duty to defend an insured named in that complaint. The allegations in Sampson's complaint do raise such a potentiality of coverage. Accordingly, we reverse the trial court's holding that Harford was relieved of its duty to defend Officer Mears in the underlying civil rights action.

*Id.*

Nautilus cannot escape its duty to defend merely by showing that *some* of the claims asserted against Strongwell do not fall within the risks covered by the policy. Rather, "[u]nder Virginia law, the determination of whether an insurer must defend an underlying action depends on comparison of the policy language with the underlying complaint 'to determine whether *any claims* alleged [in the complaint] are covered by the policy.'" *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 220 (4th Cir. 2003) (emphasis added; quoting *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995)); *Fuisz,* 61 F.3d at 242 (4th Cir. 1995) ("If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense."); *Capitol Env. Servs., Inc. v. North River Ins. Co.*, 536 F. Supp. 2d 633, 644-645 n.21 (E.D. Va. 2008) (if any claims in suit are covered then insurer must provide a defense which " includes the costs of defending non-covered claims").

Here, as set forth in Strongwell's prior briefs[4], the Amended Complaint which Black & Veatch has filed against Strongwell states claims which fall squarely within the risks covered by

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[4] Docket Nos. 16 & 20.

4

{#1571005-2, 106153-00008-01}

the Nautilus policies.[5] The Professional Services Exclusion, which Nautilus has asserted in its Amended Complaint, likewise does not bar coverage for all of the claims asserted by Black & Veatch against Strongwell, and does not relieve Nautilus of its duty to defend.

> II. **THE PROFESSIONAL SERVICES EXCLUSION DOES NOT APPLY TO CLAIMS RELATING TO MANUFACTURING DEFECTS AND NEGLIGENCE IN THE PRODUCTION OF STRONGWELL'S PRODUCTS, WHICH ARE INDEPENDENT BASES ON WHICH BLACK & VEATCH SEEKS RECOVERY FROM STRONGWELL.**

The Professional Services Exclusion in the policies cannot bear all of the weight that Nautilus seeks to have it carry. Arguing that "the crux of B&V's amended complaint relates to professional services provided by Strongwell"[6] and asserting that Virginia courts have not addressed "whether a professional services exclusion precludes coverage where an insured is alleged to have provided both professional services and something other"[7], Nautilus wrongly asserts that so long as Strongwell is alleged to have provided any professional services at all then the exclusion applies to the entire case. This analysis is simply wrong.

First, it is well settled that, "[T]he exclusion for professional services is . . . appropriately associated with a specialized knowledge and a mental or intellectual endeavor, not production, manufacture or supply of goods or manufacturing." *Transportes Ferreos de Venezuela II CA v.*

---

[5] Nautilus makes the remarkable assertion that its "prior briefing establishes, among other things, that there is no 'Occurrence' under the Policies and that various exclusions may preclude coverage, even under the 'Eight Corners' analysis. . . ." Nautilus Brief in Opposition (Docket No. 31) at p. 5. In fact, in its prior briefing Nautilus acknowledged that in the absence of extrinsic evidence it could not establish the applicability of *any* of the exclusions to coverage that it asserts, save one – the Contractual Liability exclusion. Nautilus Brief in Opposition (Docket No. 18) at p. 17, n. 10. It offered no argument whatsoever on these other exclusions. And it offered nothing more than half-hearted arguments on the "occurrence" issue and the Contractual Liability Exclusion. Instead, it focused its argument – just as it does here – on trying to convince the Court to permit it to pursue discovery of extrinsic facts to determine "whether exclusions requiring resort to extrinsic evidence may apply to bar coverage…and/or so that extrinsic evidence relevant to the single occurrence issue may also be developed." Nautilus Brief in Opposition (Docket No. 18) at p. 24.

[6] Nautilus Brief in Opposition (Docket No. 31) at p. 10.

[7] Nautilus Brief in Opposition (Docket No. 31) at p. 9.

WOODS ROGERS PLC
ATTORNEYS AT LAW

*NKK Corp.,* 239 F.3d 555, 564 (3rd Cir. 2001) (citation omitted; holding that professional services exclusion barred coverage for damages flowing from faulty design, but not from faulty manufacture), *see also Leverance v. United States Fid. & Guar.*, 158 Wis.2d 64, 83-85 (Wis. 1990), *overruled on other grounds*, *Wenkle v. Gehl Co.*, 274 Wis.2d 220 (Wis. 2004) ("[T]he professional service exclusion does not bar the occupants' claims because the claims arise out of manufacture of an allegedly defective product and not malpractice in rendering of a professional service.").

Second, Nautilus' reliance on *Harbor Ins. Co. v. Omni Construction*, *Inc.*, 912 F.2d 1520 (D.C. Cir. 1990), is entirely misplaced. In fact, that case stands for the unremarkable proposition that the Professional Services Exclusion "excludes coverage of a loss caused by the rendering of a professional engineering service, regardless of whether it is performed by a firm in the course of providing related non-professional work." *Id.* at 1525. Where the insured provides both professional and non-professional work, whether the exclusion applies turns on the question of whether the property damage was caused by the professional services, or by the related non-professional work. Indeed, in *Omni Construction* the Court ***did not*** rule that there was no coverage even if the damage resulted from non-professional work (which would have been the result if the case stood for the proposition suggested by Nautilus), but rather the Court ***remanded*** the case for a determination on the causation issue:

> We reverse the district court's legal conclusion that the professional liability exclusion is ambiguous, *and remand for the district court to find whether, as a matter of fact, the loss was caused by the rendition of a professional service*, viz. the engineering of the sheeting and shoring system.

WOODS ROGERS PLC
ATTORNEYS AT LAW

6

*Id.* (emphasis added.) This is consistent with the language of the exclusion which covers only liability "arising out of the rendering of or failure to render professional services."[8] The exclusion thus requires some causal connection between the professional services and the property damage. *See, e.g., Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 310 (5th Cir. 2010) (holding policy provided coverage where "conduct that clearly falls outside of the professional services exclusion [and] provides an independent but for cause of the injury"); *see also Reamer v. National Service Industries*, 237 Va. 466, 470 (1989) (accident "arises out of" employment "if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be done.").

Here, the Black & Veatch Amended Complaint explicitly pleads that a manufacturing defect caused damage to other property in the JBRs, giving Black & Veatch a separate, independent cause of action unrelated to any alleged "professional services."[9]

The factual allegations regarding alleged defects in Strongwell's material form an independent basis for some of Black & Veatch's claim that Strongwell is liable. Count V of the Black & Veatch Amended Complaint asserts liability for manufacturing defects.[10] In that Count, Black & Veatch specifically alleges that damage to the JBRs was the result of a condition called

---

[8] Nautilus Amended Complaint, Exhibits C & D (Docket No. 27), Professional Liability Exclusion Endorsement.
[9] *See* Black & Veatch Am. Compl. at ¶¶44, 53-56, 58, 61, 66-67, 118-32, 133-43. Indeed, a central theme of the Black & Veatch Amended Complaint is that Strongwell was a material man and supplier. Black & Veatch notes that Strongwell produces products sold in big box stores like Home Depot. Black & Veatch Am. Compl. at ¶¶ 3(d), 28. Black & Veatch goes on to allege that Midwest Towers, Inc. selected Strongwell to supply products for the JBR projects, *id.* at ¶ 44, that Strongwell actually provided those materials, *id.* at ¶¶ 53-56, and that the materials themselves proved defective. The Black & Veatch Amended Complaint specifically alleges that the material provided by Strongwell was defective *id.* at ¶¶ 58, 61, 66-67, and that those defective materials caused damage. *Id.* at ¶ 61 ("defects in the material").
[10] Black & Veatch Am. Compl. at ¶¶ 118-132.

WOODS ROGERS PLC
ATTORNEYS AT LAW

7

*{#1571005-2, 106153-00008-01}*

"dry tow," a manufacturing defect that arose because of a defect in the normal manufacturing process:

> 126. Significant portions of structurally critical areas of the Composolite panels supplied by Strongwell for the JBR Projects had an apparent manufacturing defect known as a "dry tow"— dry fiber bundles exterior to the corrosion-resistant veil and mat layers running the length of a Composolite panel in the "machine direction" (i.e., in the same direction as the glass rovings in Composolite as the product is pulled through the machine die). The appearance of a "dry tow" indicates that glass roving strands pulled through Strongwell's machine die were not fully and properly saturated with resin.
>
> 127. The "dry tow" fibers appear to have created paths for the corrosive slurry solution to penetrate into structural fibers of the Composolite panel and to degrade and weaken the panel.
>
> 128. The existence of a "dry tow" significantly weakens the strength of Composolite, particularly in the transverse direction, which is already very weak even if correctly manufactured by Strongwell.
>
> 129. Strongwell should take care to ensure that its standard products are not manufactured with a "dry tow."
>
> 130. The weakness of Composolite in the transverse direction is a significant factor in the failures of Composolite that have been observed in the JBR Projects and was a proximate cause of the physical damage to Composolite and other tangible property that Black & Veatch was required to repair and/or replace at substantial expense.
>
> 131. Composolite weakened due to a "dry tow" could contribute to deck collapse in the JBRs. Deck collapse was a proximate cause of physical damage to other tangible property in the JBRs and posed a threat of personal injury or death to maintenance and operations personnel who work on, above, or below the decks in the JBRs.[11]

Black & Veatch claims that this manufacturing defect, *independent of design considerations*, was "a direct and proximate" cause of damage to property other than

---

[11] *Id.* at ¶¶ 128-31.

Strongwell's products.[12] This is different from claiming that the specification or design itself caused the harm. That the actual manufacturing is at issue is clear from the allegations asserting that "dry tow" resulted because the "glass roving strands" pulled through machines producing the materials "were not fully and properly saturated with resin."[13] Count VI, for Negligence, makes similar assertions.[14]

Nautilus is thus mistaken in asserting that Black & Veatch's manufacturing defect claims are part and parcel of the professional negligence claim asserted in Count XI of the Amended Complaint. A recovery based on the alleged manufacturing defect would not fall within the Professional Services Exclusion (or within any other the other exclusions asserted, since the Count specifically alleges that the defects caused damage to property other than Strongwell's products). Because "the allegations in the Underlying Action complaint plausibly might cover *some set of facts* that fall outside the exclusion," Nautilus is obligated to provide a defense to Strongwell. *Bohreer v. Erie Ins. Group*, 475 F.Supp.2d 578, 586 (E.D. Va. 2007) (emphasis added).

### III. THE COURT SHOULD STAY ALL PROCEEDINGS RELATING TO THE ULTIMATE QUESTION OF COVERAGE PENDING RESOLUTION OF THE UNDERLYING SUIT.

Nautilus' real goal in bringing this case is to get a green light from this Court to engage in discovery of facts extrinsic to the Black & Veatch Amended Complaint, and then to use that discovery to withdraw the defense it is providing to Strongwell on the theory that any *recovery* by Black & Veatch will not be covered under the policy.[15]

---

[12] *Id.* at ¶ 132(c) & (e) (claiming that manufacturing defect a direct and proximate cause of damage).
[13] *Id.* at ¶ 126.
[14] *Id.* at ¶¶ 133-143.
[15] Nautilus Brief in Opposition (Docket No. 18) at pp. 10-11, 14.

Despite Nautilus' protestations to the contrary, all of the matters on which it suggests it needs discovery are matters that are pled as part of the Black & Veatch Amended Complaint and which will be litigated in the underlying case.[16] Indeed, Nautilus' suggestion that, "Where appropriate and sufficient, discovery from the underlying litigation may be relied upon in proceeding with and resolving the instant coverage litigation"[17] shows that Nautilus seeks to litigate the tort case on manufacturing defects and to attempt to show that Black & Veatch cannot prove what it has alleged. If there are coverage issues that Nautilus seeks to litigate that are truly distinct and different from the merits of the underlying suit, then the discovery from the underlying suit would be wholly irrelevant. The fact that Nautilus cannot identify any issue or item of discovery that it wants to pursue that *is not* part of the underlying case conclusively establishes that what Nautilus really wants to do is to litigate precisely the same merits issues that are being litigated in the underlying suit with an eye to claiming no liability on the part of Strongwell means there is no coverage. This is just plain wrong.

It is illogical, inefficient and unfair to force Strongwell to litigate the question of whether Black & Veatch can prove the liability that Strongwell has denied, in order to keep the defense to which it is contractually entitled even if Black & Veatch's allegations turn out to be wholly false and unprovable. Strongwell agrees that Black & Veatch cannot prove much (perhaps all) of what it has alleged. But the duty to defend turns on what Black & Veatch has alleged. Nautilus has the contractual "duty to defend [Strongwell] against any suit *seeking*" damages for

---

[16] In its Brief in Opposition (Docket No. 31) at p. 11, Nautilus asserts that it desires discovery on "when the components were damaged" – which is a matter alleged in the Black & Veatch Amended Complaint at ¶¶ 59 & 60, and is integral to any determination of what actually caused the damage to the JBRs. Similarly, Nautilus says it wants discovery on the "specific components that were damaged" – which, likewise, will have to be litigated in the underlying suit because it relates both to causation and damages. And it says it wants discovery on causation – which is obviously an element of the underlying suit. Nautilus Brief in Opposition (Docket No. 31) at p. 11.

[17] Nautilus Brief in Opposition (Docket No. 31) at p. 12.

"property damage" caused by an "occurrence" under the policies.[18] A suit "seeks" such damages if it *asks for* or *requests* them – regardless of whether the plaintiff ultimately obtains them.[19] There is no unfairness in requiring Nautilus to maintain the defense it agreed to provide.

It is, however, unfair to make Strongwell litigate the issues in this case that must also be litigated in the underlying case. That is why a prevalent practice has been to stay issues regarding indemnity while the underlying case is pending, except there is a clear question of contract (*e.g.* lack of consideration) regarding the validity of the insurance contract. *See Penn-American Ins. Co. v. Mapp*, 461 F.Supp.2d 442, 458 (E.D. Va. 2006) ("premature" to rule on duty to indemnify), *appeal dismissed*, 521 F.3d 290 (4th Cir. 2008).

If discovery proceeds while the underlying suit is still ongoing, and Nautilus then brings a dispositive motion, Strongwell risks being subject to contrary verdicts (*i.e.*, the Court here might rule that there is no coverage, yet the evidence at trial in the underlying case might be different and a recovery might therefore fall within the risks covered by the Nautilus policies). Strongwell should not be put to this risk, nor should it be put in the untenable position of having to argue that Black & Veatch can prove allegations that Strongwell denies in the underlying suit, or else risk losing its defense.

## CONCLUSION

For the foregoing reasons, Strongwell respectfully requests that the Court (i) hold that Nautilus is obligated to defend Strongwell against the claims asserted by Black & Veatch in the underlying suit; (ii) dismiss Nautilus' Amended Complaint insofar as Nautilus seeks a declaration that it had no duty to defend Strongwell; and (iii) stay all proceedings on the issue of

Woods Rogers PLC
Attorneys at Law

---

[18] Exhibits C & D to the Nautilus Amended Complaint (Docket No. 27), at Section I, ¶ 1(a) (emphasis added).

[19] Definition of "seek" found at Merriam-Webster.com. 2012. http://www.merriam-webster.com (December 8, 2012).

11

{#1571005-2, 106153-00008-01}

whether Nautilus owes indemnity until the underlying litigation between Black & Veatch and Strongwell has been concluded.

        Respectfully submitted,

        STRONGWELL CORPORATION

        **/s/ Mark D. Loftis**
By:_____
        Of Counsel

Mark D. Loftis, Esq. (VSB #30285)
James W. Jennings, Jr., Esq. (VSB #12727)
Erin B. Ashwell  (VSB #79538)
Woods Rogers PLC
10 South Jefferson Street, Suite 1400
P.O. Box 14125
Roanoke, VA 24038
Telephone:  540-983-7600
Facsimile:  540-983-7711
loftis@woodsrogers.com
jennings@woodsrogers.com
eashwell@woodsrogers.com

   *Counsel for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2012, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      John P. Fishwick , Jr., Esq.
      Monica L. Mroz, Esq.
      Lichtenstein Fishwick PLC
      101 S Jefferson Street, Suite 400
      Roanoke, VA 24011
      jpf@vaonline.com
      monica@vatrials.com

WOODS ROGERS PLC
ATTORNEYS AT LAW

*{#1571005-2, 106153-00008-01}*

and

        Ronald P. Schiller, Esq.
        Nicole J. Rosenblum, Esq.
        Michael R. Carlson, Esq.
        Hangley, Aronchick, Segal, Pudlin & Schiller
        One Logan Square, 27th Floor
        Philadelphia, PA 19103
        mcarlson@hangley.com
        rschiller@hangley.com

*Counsel for Plaintiff*

**/s/ Mark D. Loftis**
_____